SAVOY, Judge.
Plaintiff instituted this suit for damages and personal injuries against the defendant, Paul H. Guilbeau, and his liability insurer, Bankers Fire & Marine Insurance Company. In this opinion, although there are two defendants, Paul H. Guilbeau will be referred to as the defendant. Plaintiff alleged that on January 6, 1964, at approximately 2:05 P.M., he and a male companion, Valeria Jones, were in front of the Canal Service Station on East Landry Street in Opelousas, Louisiana, and were in the process of getting onto a bicycle, when they were struck from the rear by a truck operated by Paul H. Guilbeau, or by the trailer being pulled by the truck. It is alleged that East Landry Street is a four-lane highway, with two lanes for travel and two for parking, and that plaintiff was in the left hand parking lane at the time he was struck by the truck or trailer being driven by defendant in a westerly direction. At this point, the street is one way for the west bound traffic. Defendant is alleged to have been negligent in failing to keep a proper lookout, in failing to sound a warning, apply his brakes, veer to one side, or take other action under the circumstances in order to avoid a collision with the bicycle and its passengers, in failing to drive in a careful manner, and in driving the truck in a lane on the road which was reserved for parking into the rear of a stationary object in broad daylight when there were no visual obstructions.
Defendant filed an answer denying the pertinent allegations of plaintiff’s petition and alleging that the sole proximate cause of the accident was the negligence of plaintiff in failing to keep a proper lookout, in failing to keep his bicycle under control, in failing to remain in a position of safety and entering a heavily traveled highway at a time when it was occupied by another vehicle, and in turning the bicycle directly into the trailer being pulled by defendant. In the alternative, these acts were alleged to constitute contributory negligence.
After a trial on the merits, the district judge rendered a written opinion in which he found no negligence on the part of defendant, and further, that should defendant be guilty of negligence, the plaintiff was guilty of contributory negligence, and accordingly, judgment was entered for defendant. From this judgment plaintiff has appealed to this Court.
Plaintiff maintains that the district court erroneously found the highway to be a four-lane highway for west bound traffic at the point of the accident, rather than a two-lane highway with two lanes reserved for parking, and wrongly concluded that plaintiff was negligent in going onto the highway. It is submitted that the highway or street was only a two-lane highway, and it was not negligence for plaintiff to roll his bicycle into the parking lane. Plaintiff also maintains that defendant was negligent in making a passing maneuver requiring him to go too far to the left so as to leave the customarily traveled portion of the highway and go into the parking lane thereby endangering others who were lawfully on the highway.
Defendant maintains that the findings of the district court are clearly borne out by the record, that the defendant was not negligent in any way, but that the sole proximate cause of the accident was the negligence of plaintiff.
The record shows that the accident occurred on January 6, 1964, at approximately 2:00 P.M. in Opelousas on East Landry Street in the front of a Canal Service Station at a point approximately fifty feet *452 west of the intersection of Academy and East Landry Streets. Several other places of business are located in the area, including an automobile dealer and a used car lot. Upon entering Opelousas from east to west on U. S. Highway 190, the highway becomes East Landry Street when it crosses Academy Street. On either side of Academy Street, the highway is one way to the west. Before reaching Academy Street, the highway is two-lane for west bound traffic. The highway on both sides of Academy Street is approximately the same width, with the paved portion west of Academy Street a little wider. The only marking on East Landry Street is the center line, which is a continuation of U. S. Highway 190 center line, and there are no parking lanes marked west of the intersection until three or four blocks further to the west. Nor are there any signs or markings to indicate parking on the street next to the curbs. There is visible a tar line approximately nine feet from the curb on each side, where additional paving was added. The record shows that if one is traveling in the center of the south lane of U. S. Highway 190 and crosses the intersection, keeping the same distance from the center line, then, upon entering East Landry Street, a portion of the vehicle would extend over the tar line.
In front of the Canal Service Station located to the south of the street, the driveway and sidewalk slope to join the street, and there is no elevated curb. A utility pole is located on the sidewalk near the curb line.
At the time of the accident, a drizzling rain had just stopped and the street was wet. The defendant was driving westerly on U. S. Highway 190 in a 1959 Ford pickup truck, pulling a double axle horse trailer loaded with three animals. The trailer extended out wider than the truck only an inch or so on each side. He was in the south lane of the highway, and before he reached Academy Street he began passing an automobile traveling in the north lane of the highway. The automobile was crowding the center line. The two vehxles were traveling abreast of each other as they went through the intersection, with defendant traveling at a speed of less than thirty miles per hour. There was a conflict in the evidence as to how close to the south curb line the defendant’s truck and trailer were located at the time of the accident. The district court found that the accident did not take place at a point two or three feet from the curb line as the plaintiff contended, but rather that it occurred six to eight feet from the curb line.
Plaintiff, age 27, was on the seat and his passenger on the handlebars of the bicycle when it collided with the trailer being pulled by defendant’s truck. The only damage to the bicycle was a scratch on the back fender and the right pedal was knocked off. The trailer was dented on the left fender and left hub cap.
The testimony of the various witnesses as to how the accident occurred is conflicting.
Basically, there are two versions of the accident, although there are individual variations given by each witness. The plaintiff’s version is that he walked and rolled the bicycle from the pumps at the service station down the embankment of the driveway into the parking lane of the street; that his companion, Valeria Jones, got onto the handlebars of the bicycle; that plaintiff had the bicycle balanced with one foot on the curb; that he gave it a slight shove and when he was just about moving, he was hit from the back. He claims he was never more than feet from the curb at any time. This version is substantiated by the testimony of Valeria Jones.
The version of the accident accepted by the district court, based mainly on the testimony of the defendant and Mrs. Norman L. Gunn, was that plaintiff and his companion were riding the bicycle slowly down the driveway of the service station in a northwesterly direction and reached the curb line of the street at about the time defendant’s truck was abreast of them, and at the time of the impact the truck was six to *453 eight feet from the left curb line of the street. This version is also substantiated by the testimony of Mr. Norman L. Gunn.
One of the most important factors in this case is the location of the point of impact. Although the witnesses were in direct conflict on this point, we find no manifest error in the holding that the point of impact occurred at approximately six to eight feet from the south curb line of the street. The defendant’s testimony is corroborated by that of Mr. and Mrs. Norman L. Gunn, who were riding in an automobile following the truck and trailer being driven by the defendant. The record shows the bicycle was thrown and fell away from the trailer, and ended up after the accident on the street near the curb line at a point near a utility pole. It is reasonable to assume that the bicycle was thrown to this position by the impact of the collision, and would likely have been knocked onto the sidewalk if the point of impact had been only feet from the curb.
Plaintiff urges that defendant was negligent in driving in a lane reserved for parking. The district court found the highway to be a four-lane highway at the point of the accident, and found there was nothing to indicate that vehicles were not to travel in the extreme left or south lane. The record shows that the only marking on the street was the center line, and that there were no markings or signs whatever to show the street was anything but a continuation of U. S. Highway 190 until three or four blocks further west, where parking spaces were marked. No statute, ordinance or other law or regulation was introduced in evidence or pointed out to show that the lane next to the curb was solely for parking. No cars were parked in the lane within the block where the accident occurred, or in the one or two blocks further to the west. The record shows that when no vehicles were parked along the street, the automobiles going west on U. S. Highway 190 would continue to ride in the middle of the area to the south of the middle line of the road since there were no markings on the road or otherwise to indicate they could not travel on that portion of the highway. The evidence shows that this was the course the defendant had taken. Nor do we believe that the black tar line located approximately nine feet from the curb could be considered by itself to be a legal division of the south half of the street. Under the circumstances, we do not think it makes any difference in this case whether the street is considered a two-lane or a four-lane street. Although defendant testified he knew cars parked on the left of the street and he was driving a bit closer to the curb than he felt he should have been, this because of the vehicle to his right hugging the center line, we find no negligence on defendant’s part in occupying the position in the street that he did.
Although defendant saw the plaintiff and his companion on the bicycle near the pumps on the lot of the service station when he was fifty feet away, they were moving slowly in a northwesterly direction, and we agree with the district court that he had the right to assume they would not ride into the street in the path of his truck. The evidence .shows they reached the street at the time defendant’s truck was about even with them. After reaching the street, the bicycle appeared to turn to the west for a short distance as the truck passed, and then swerved to the right to come in contact with the trailer. At the time the plaintiff entered the street, the defendant had no opportunity to stop, and he could not turn to the right because of the vehicle in the next lane.
 Nor do we find any merit in the contention that defendant was negligent in moving too far to the left in a passing maneuver. The record shows that plaintiff moved into the south lane of the highway before the intersection with Academy Street, and at a distance at least 160 to 175 feet, or possibly as far as 300 feet, from the point of the accident. The provisions of LSA-R.S. 32:78 relating to changing lanes of traffic on a one way street are not applicable to this *454 case since at the time defendant changed lanes, it was safe for him to do so. At that time, there was no danger to anyone on the highway. From that point the defendant had the right to remain in the left lane, and he traveled in a straight line with reference to the center line, without veering to one side or the other, until the point of the accident. Under these facts, the defendant was not negligent.
The district court was not impressed with the version of the accident given by plaintiff and Valeria Jones that they did not get on the bicycle until they were in the street. All other witnesses, including plaintiff’s own witness, Paul St. Amand, Sr., testified that plaintiff and Jones rode the bicycle from the gas pumps at the service station down the embankment and into the street to the point of the collision. St. Amand testified that they reached the street when defendant was only 10 to IS feet away. The defendant testified he was even with the bicycle when it reached the street. Plaintiff was familiar with the street, and knew it was a heavily traveled highway. He testified that he knew cars passed the area abreast of each other, and that he did not see the truck before the accident. Even though he believed the area next to the curb was reserved for parking, the lane was not marked as a safety zone of any kind, and plaintiff was grossly negligent in entering it without looking to see if any traffic was approaching. It is obvious that if he had kept his bicycle under control and had seen the approaching truck, as he was slowly approaching the street, he could have turned to ride along the sidewalk or even near the curb, and the accident would never have happened.
The only case cited in plaintiff’s brief is that of Tate v. Norfolk and Dedham Mutual Fire Ins. Co. (La.App., 1 Cir., 1963), 153 So.2d 495. We find this case distinguishable by the facts. In the Tate case, supra, the defendant had an opportunity to observe the presence of the boys on a bicycle on an open road at a distance of 300 feet from the point of collision, at the time he passed another car, but did not see the boys or take any reasonable precautions to avoid striking the bicycle, although he had an opportunity to do so. The driver of the other car saw the danger and stopped 50 feet short of the point of impact. In the case before us on appeal, plaintiff rode into the street when the defendant’s truck was very near, and defendant had no opportunity to observe any danger to plaintiff until it was too late for him to take any measures to prevent an accident.
After carefully examining the record, we agree with the findings made by the district court.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s cost.
Affirmed.